IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

FEBRUARY TERM, 1883.

---

### JAMES W. ANTHONY v. JOSEPH B. FRITTS.

1. In a suit at law against two makers of a promissory note, one of them cannot set up as a defence that he was known to the payee to be an accommodation maker, and that the payee bound himself by legal contract to the other maker to give him time for payment.
2. In such cases a mere equity arises and the remedy is in chancery.
3. Payment of interest on a contract has now the same effect to keep alive the contract with respect to the statute of limitations as it had before the revision.

---

Suit upon the following promissory note, viz.:

"$1000.

"On or before the 1st day of April, 1873, we, or either of us, promise to pay James W. Anthony, or bearer, the sum of one thousand dollars, with interest from date, without defalcation or discount, for value received.

"April 3d, 1872.

"WILLIAM CRATER.
"A. S. BANGHART.
"JOSEPH B. FRITTS."

Interest had been paid up on the note to the 1st of April, 1878, by one of the makers, William Crater. The suit was brought on the 12th of November, 1879.

The defendant, under plea and notice, proved that on the 1st of April, 1878, the plaintiff induced the said Crater to give him a mortgage as collateral security, agreeing in consideration thereof to extend the time of the payment of the said note. He further proved that he and Banghart were accommodation makers of the note, and that such circumstance was known to the plaintiff.

A verdict was taken for the plaintiff, subject to the opinion of this court on the law arising out of the foregoing facts.

Argued at November Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, DIXON and PARKER.

For the plaintiff, *Oscar Jeffery.*

For the defendant, *Martin Wyckoff.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The problem to be solved in this case is whether a person who has contracted as a principal, but who is known to be a surety, can, at law, claim any of the privileges belonging to the latter character. The subject may be said to belong to the vexed questions of the law, for the decisions relating to the matter are much in conflict. It is said in the text-books, and the observation appears to be justifiable, that the weight of American authority is in favor of the admissibility of the defence interposed in this case; but this doctrine is, I think, in the main, the product of the union of the legal and equitable systems so generally prevailing in this country, and it is opposed not only to correct theory, but to a series of judgments in the English courts. The following are decisions of this latter kind: *Strong* v. *Foster,* 17 *C. B.* 201; *Manley* v. *Boycot,* 2 *El. & B.* 46; *Pooley* v. *Harradine,* 7 *El. & B.* 431; *Greenough* v. *McClelland,* 2 *El. & El.* 424,

428; *Fentum* v. *Pocock,* 5 *Taunt.* 192; *Price* v. *Edmunds,* 10 *B. & C.* 578.

These judgments appear to have been deduced from the following principles: that the circumstance of suretyship is, in this class of cases, in no respect an ingredient of the contract which is in suit; that the undertaking of the party is that of a principal promisor, and that he cannot claim that by reason of any stipulation, either express or implied, he has a right to be treated in any other capacity; and that when he insists on being discharged from his undertaking, on the ground that time has been given to a copromisor, he, in effect, is asking that such undertaking may be treated in this respect as one of suretyship, which is contrary to its nature. It will be observed that this theory has nothing to do with the question which is so much discussed in the cases on this subject in the courts of this country, whether or not the testimony showing that in point of fact the party was a surety, although he did not contract as such, is admissible, for the conclusion arrived at proceeds from the hypothesis that accepting the incident of suretyship, such incident, as it does not qualify the contract, has no effect whatever in a court of common law. And it is also to be remembered that in this line of thought there is no denial that when a person contracts as surety he can defend himself, in such respects as are now involved, equally in a legal as in an equitable tribunal: the distinction being that in the former forum he cannot require the promisee to regard him, in any aspect, as only collaterally liable, having bound himself as a primary debtor. If this defendant had bound himself in this instance as a surety, the extension of time for the payment of the note given on a legal consideration to the principal debtor, would, either at law or in equity, have worked his exoneration from all liability; but having stipulated unconditionally for the payment of this money, as he cannot interpolate into his engagement any terms tending to his protection, it does not seem practicable for him to do more than to assert that the conduct of the plaintiff in disregarding his *status* of surety, of

which he was informed, was inequitable. And this is in truth to place the subject on its legal footing. The plaintiff had knowledge that the defendant was an accommodation maker; but he did not deal with him as such surety. If he had been asked to do so, it is quite likely he would have refused to accept so irregular and imperfect an undertaking. What he did was to take from him a direct promise to pay this money at a given date. This contract being, as respects the defendant, of primary obligation, cannot be converted into one of secondary obligation; but nevertheless, in the view of a court of equity, it was not conscionable for the plaintiff to increase the hardship of the defendant's position as, in point of fact, he was the surety of the principal debtor. But this right of the surety to have his *status* respected does not pertain to his contract, as an implied incident, but is a mere equity, which it is irregular to enforce in a court of common law, so long as it is important to preserve the distinction between the procedures of a legal and those of an equitable forum.

This discrimination has been accurately defined in some of the English decisions above cited. In the case of *Hollier* v. *Eyre*, 9 *Cl. & Fin.* 1, 45, Lord Cottenham very clearly declares the grounds on which courts of equity, in matters of this nature, base their action. His statement is this: "But although all the grantors were principals as between them and the grantees, yet as between themselves some of them might be sureties for others; and if it was established that such was the case as between the plaintiffs and Lynch, and that the grantee knew that such was the case, they might by their dealing with Lynch have raised an equity in favor of the plaintiff, entitling him to the protection of a court of equity against the legal consequences of the instruments he joined in executing. This distinction is perfectly well settled and is the ground of many of the decisions." And with equal emphasis with respect to the equitable foundation of this practice on this subject, Lord Justice Turner, in *Davies* v. *Stainbank*, 6 *De G., M. & G.* 679, says: "This court, as I apprehend, has at all times exercised jurisdiction in cases of this nature.

It is, in the eye of this court, a fraud in a creditor to proceed to law against a surety, after he has agreed with the principal debtor to enlarge the time for payment of the debt; and this court relieves against the fraud."

Such is the equitable doctrine, and such are the grounds of that doctrine; a court of equity intervenes in such cases, not by way of enforcing a contract, but as in many similar cases, for the prevention of unconscionable conduct, against which there is no legal protection. And even considered in this light, it has been scrupled whether there is any reasonable foundation for the practice, for in a recent case, Greenough v. McClelland, above cited, we find that Mr. Justice Williams, referring to the subject, thus criticises the intervention of chancery in such cases. He says: " A common law lawyer might feel difficulties in the way of arriving at such a doctrine. He might consider that there is nothing illegal in an agreement by one who is in reality a surety, to forego his rights as a surety and submit to all the liabilities of a principal; and that a party to a written instrument who on the face of it contracts as a principal, thereby enters into such an agreement. I may say, for myself, without disrespect to the courts of equity, that I do not understand why they should have disregarded such considerations." It may therefore, I think, be safely said that the situation in question gives rise at best to nothing but an equity, and that such equity is of a class that is not recognized by courts of law.

This subject was considered and placed upon the footing above indicated by the Queen's Bench in the case of *Pooley* v. *Harradine,* 7 *El. & B.* 430. The action was on promissory notes and the plea was *on equitable grounds,* by force of the act to the effect, that the defendant made the notes jointly with one J., for J.'s accommodation and as surety for J.; and that the notes were delivered to plaintiff and taken by him on an agreement between them that defendant should be liable as surety only, and with notice that he was surety only ; and that afterwards the plaintiff, without defendant's consent, gave time to J., and but for which he might have obtained pay-

ment.  On demurrer, this plea was held good, the court say-
ing that although the written contract contained in the note
could not be varied by parol, so as to introduce a stipulation
that the defendant was to be regarded as only collaterally
bound, yet, nevertheless, an equity arose from the relation of
surety and principal between the defendant and J., and notice
thereof to the plaintiff, and that such equity which by force
of the statute could be set up as a defence at law, though
formerly it was available only in chancery.  The doctrine of
this case was approved of and followed in the Exchequer in
Greenough *v.* McClelland, which has been already referred to.
And that, I apprehend, is the inevitable result of correct
reasoning on legal principles, when the question arises in a
jurisdiction in which the legal and the equitable systems have
been preserved in separate forms.

And in the light of this view, if the American cases are
critically examined, the great bulk of them cannot be regarded
as adverse authorities.  The result in some of the cases was in-
fluenced by statutory provisions, and in others by the circum-
stance that the methods of chancery were, in such jurisdictions,
interfused with the practice of the common law courts.  In
Massachusetts and in Pennsylvania this defence was admitted
avowedly on this ground.  In the State of New York, notwith-
standing some earlier intimations from the bench to the contrary,
as late as the year 1872, it was decided by the Supreme Court
that the equity in question was not cognizable at law.  *Camp-
bell* v. *Tate,* 7 *Lans.* 370 ; *Benjamin* v. *Arnold,* 2 *Hun* 447 ;
and finally in *Hubbard* v. *Gurney,* 64 *N. Y.* 460, the Court
of Appeals followed the English rule and declared the defence
admissible on equitable grounds, the code having authorized
that mode of proceeding.

In this state, although the precise question has not been de-
cided by the courts, the judicial intimations, when this point
has incidentally been considered, are adverse to admission of
this defence in a suit at law.  In *Paulin* v. *Kaighn,* 3 *Dutcher*
503, Chief Justice Whelpley refers to this doctrine, and with
entire distinctness recognized it as the settled rule of the law.

Touching the defence by a surety who had contracted as a principal debtor, of an agreement to extend the time of payment, he says: " There is an obvious propriety in excluding the evidence at law, in an action upon the contract brought by the creditor.　By the form of the instrument they agreed to be bound to him as principals; the action is to enforce the instrument in the shape the parties put it."　Equally clear is the acceptance of the rule in *Pintard* v. *Davis, Spenc.* 206; *S. C.,* 1 *Zab.* 632.

With respect to the second ground of defence supposed to arise by force of the statute of limitations, I cannot perceive the force of such contention.　There were annual payments of interest upon this note up to the date of the suit; such payments by one of the joint makers have always been held to keep alive and renew the ground of action as against all the parties to the contract.　*Merritt* v. *Day,* 9 *Vroom* 32. And the legal force of such payments has been preserved by the express language of the present act.　*Rev., p.* 595, § 10.

The plaintiff must have judgment.